Ladies and gentlemen, please rise. This court is now in session. Please be seated. Would the clerk call the next case, please? 3-16-05-74. Consolidated to 3-16-05-75. In re Estate of Everett Jibben. Deceased, John Marie Severance. Appellant by Valerie Mailey v. Charlotte Jibben. Appellee by Craig Hyman. Thank you. Ms. Mailey? May it please the court. My name is Valerie Mailey. I represent Dawn Marie Severance in this consolidated case. The petitioner, Dawn Marie Severance, has never tarried or delayed or been negligent in pursuing her rights as a child of Everett E. Jibben. She has lived her life as a victim of subterfuge and concealment by her parents and other family members. And as a result, not only did she become an orphan and lose the ability to claim her identity, but she was also severely financially damaged. She never received support from Everett E. Jibben after she was orphaned. And she has suffered the financial consequence of being excluded from inheritance of significant farm holdings as his heir. She respectfully requests that this court grant her her day in court. This case came about because of a partition case. We're here on some probate cases. But this started as two partition cases in Tazewell County, filed actually by Charlotte Jibben, the respondent, in this case. And the Jibben family, through various estates, owned farmland together. And she filed this partition in order to partition the interest. In that case, the petitioner published as to unknown owners. And Dawn Marie Severance received a telephone call from another family member that said, there's this case going on, and you might be interested in it, from one of the Jibben family members. And she's not a Jibben family member, or at least she didn't have any proof that she was. And so she did some digging. And at that time, two different people disclosed to her that her mother had told her that her father was Everett E. Jibben. Now, it wasn't that there wasn't some thought in her mind as a child, because twice she had asked this man if he was her father. And one time he didn't give her a straight answer, and the second time he flat out denied it. But based upon this new information from a, let's see, it would have been a, not a cousin of her father, her father's brother's son. First cousin once removed, I guess you would say. It's William. Yeah, William, right. Based on a statement from William that her mother had identified Everett E. Jibben as her father. And a statement from Paula Farland, who was a cousin of Dawn Marie Severance, that her mother had made the same identification. She proceeded to file a petition to intervene in the partition case. So that's how this started. Then in the partition case, the judge said, well, if she is in fact an heir and a part owner of the farm, that can only be established in a probate case. Not in this partition case. You've got to go back into the probate cases. If you have a case, it starts there. And if you establish that, then you can come back here and see if you have any rights in the partition case. Thus, the probate case is in front of you today. And so therefore, the case was filed to open two probate cases. The case of Everett E. Jibben, who would be Dawn's father. And the case of Mabel Jibben, his mother. He actually pre-deceased his mother, which would then make his children an heir in his mother's case. Or a devisee, actually, in that case. Both of their wills left farmland to descendants persterpes. Which if Dawn Marie Severance is a descendant, she would have been included in both probates. Neither probate named her as an heir or as a legatee, nor did either probate publish to unknown heirs. And they are old cases. So we are trying to open these probate cases at this point. We know we're past the two-year period, under 214.01. There's no question about that. We know that. So the question becomes whether we can use the fraudulent concealment exception to the two-year limitation in 2-1401 to reopen these probate cases. Now, in this stature of this case, which is on a motion to dismiss under 216 and 2619, all inferences are to be drawn in favor of the petitioner, Dawn Marie Severance. So the facts, in general, are undisputed because there are no denials of the facts. The complaint stands as it is because it's not denied. And then all the inferences get drawn in favor of Dawn Marie Severance. So the question becomes, was there fraudulent concealment? And if there was, when did it end? The trial court found that it ended about six years ago. We contend that it ended in 2015 when the probate case kind of broke all of this open. I mean, the petition case broke all of this open. And the incident about six years ago is the crux of the trial court's decision. And that incident is fully laid out in the briefs whereby Charlotte Gibbon, the petitioner, and Dawn Marie Severance met for the first time at a family funeral as a visitation. Now, these families are interrelated, just so you know. This is Green Valley, Illinois, and it's not a big community. And Dawn's mother and Everett E. Gibbon were second or third cousins. So they were connected back somewhere. And so the families know each other, is my point, and that comes out in the affidavits. And so it's not unusual for these families to be at common visitations, I guess is my point. So they had never met, but they knew who each other was. She knew who Charlotte was. And Charlotte takes her into a pew and tells her this story. And we've laid it all out in the brief and the affidavits. And the affidavit basically says that she said, I know why you came to Everett John's visitation, meaning her husband's visitation, which would have been Dawn Marie's half-brother. It was to view your half-brother. She told me that her husband, Everett John Gibbon, knew that I was his father's daughter. She also told me that he didn't want to believe that about his dad. At that time, I didn't know whether or not to believe what she said. She wrote a contact information for me on a church pew envelope, and we attached that to the affidavit. Charlotte Gibbon files her own affidavit. And by the way, these were both filed in the partition case, but got added to this case. And her affidavit stated, at no time, whether before or during my marriage with Everett John Gibbon, did he tell me that he knew his father, Everett E. Gibbon, had a child other than Everett John Gibbon. I was never informed by my husband, Everett John Gibbon, that he had any siblings, or that his father, Everett E. Gibbon, had any other children other than Everett John Gibbon. I did not at any time tell the petitioner or anyone else that I knew the petitioner was the daughter of Everett E. Gibbon. And then she states in her affidavit, I do not have any knowledge of any facts that would support the contention that petitioner Dawn Marie Severns is a child of Everett E. Gibbon. The trial judge found that that conversation ended the period of fraudulent concealment and imposed upon Dawn Marie Severns a duty to investigate. We argue that that is error. First of all, it failed to draw all inferences in favor of Dawn Marie Severns. Her affidavit says, I didn't know whether to believe her or not. And it was probably good that she didn't, so to speak, because the affidavit says that's not what I said. Charlotte says, I didn't say that, and I had no facts to support it. So if Dawn Marie Severns had asked her, show me what you've got because I want to go in and file something in the probate cases to establish that I'm a part owner of this and I want to claim my inheritance, the answer would have been, I do not have any knowledge of any facts that would support the contention that you are a child of Everett E. Gibbon. That's what she would have heard. And she had already done her good faith investigation in the past. She looked at her birth certificate, whereby her mother had concealed the age and said the father was 35, not 55. She had twice asked Everett Gibbon. And the second time was at a time when I would say that the public policy of this state of Illinois would say that he had a duty to tell her the truth. Because at that point, her mother had died. And she was going to be made a ward of the court because she had no declared father. And at that point, the public policy of this state, I believe, would impose a duty upon someone to, if they are asked affirmatively, to disclose their paternity. And so those are the types of fraudulent concealment that prohibited her from knowing who her father was. Now, in this case, we've got a little bit of a dichotomy in the briefs on what exactly the standard is we're looking at in fraudulent concealment. Fraudulent misrepresentation versus fraudulent concealment. And part of the dilemma we have is that we kind of have a little bit of both. In other words, concealment is that you remain silent. Misrepresentation tends to be that you speak, but speak untruthfully. And sometimes they intermix. So I don't want to get too hung up on those because I think they interplay together here. Regardless, we need all of those elements. And we've gone through all of that in our brief quite in detail, especially in the reply brief. But clearly the concealment was based on the birth certificate. It's based upon the affirmative statement of the father. It's also based, lastly, upon an affidavit filed in Everett E. Gibbons' estate by Everett John Gibbons, where he does not disclose Dawn as a daughter of his father. The other issue that kind of underlies this case is how do you look at those two affidavits and the claim that Dawn's affidavit is a judicial admission whereby she's saying, I had enough knowledge back then. But I think you have to read them together. And eventually they cancel each other out because Dawn's affidavit says, I got a little piece of information. And Charlotte's affidavit says, yeah, but there's nothing else. There's nothing else. And so even they cancel each other out to that respect. And Charlotte's saying your argument, the affidavits, the two affidavits you're referring to are Charlotte's affidavit and Dawn's affidavit, one saying the conversation occurred at the funeral and the other saying, no, it didn't. Charlotte's affidavit doesn't say it didn't occur. She says, I didn't say those things. I don't know what she said. These women had a conversation with you alone. And the tribal judge was required to view the affidavits in the light most favorable to Dawn. Correct. He resolved the issue of credibility where those two affidavits conflicted in favor of Dawn, that this conversation occurred. So now you're blaming him for doing what he should have done. No. Dawn doesn't know. The conversation occurred. But the statement by Charlotte is that, I mean, I would interpret it this way. If you draw the inferences in favor of Dawn, even if the conversation occurred, apparently Charlotte had no basis for saying it because she states unequivocally that she's got no facts in support of it. So whatever she said to Dawn about paternity, she had nothing to back it up. That's what her affidavit says. I have nothing to back it up. To anything like that, I've got nothing. I've got no facts. I have no knowledge of any facts that would support the contention that she is a child. So regardless of what that conversation was in the pew, because an admission by Charlotte Gibbon is not enough to go forward on to prove a paternity in this case. Thank you. What's the actual evidence that Everett E. was her father? Well, in our petition, we don't have to lay out all of our evidence. We don't have to prove our case at the pleading stage. But our primary evidence is set forth in our petition, which is we have two statements by the mother identifying him as the father. Okay? That's the primary evidence in the petition, okay? And those under the hearsay exception on proving lineage, parentage, et cetera, those kinds of hearsay statements are admissible to prove lineage, parentage, et cetera. So those are the primary statements. This is what I would call an Abraham Lincoln paternity case, right? In other words, we don't have the DNA, right? We're not going to have the DNA evidence. This is not a modern paternity case. We're going to use identification. We're going to use similarities, but we have the two statements. If we didn't have the two statements, we would have only a circumstantial case. But in this case, that becomes the crux of the proof. And we believe that's sufficient to withstand a 2615 motion. The judge never reached the 2615 motion in this matter. So proving paternity in this case is a unique prove-up at a trial. It's not the typical prove-up that we would see. Fraud is the element that we have to focus on. That's right. That's the element here. Whether or not we can prove our case later is our problem. But I just wanted to explain to you where it's coming from. So how do we know fraud exists? Because he denied it to your client when she asked. So how do we know that was untrue? Well, when you conceal a cause of action, you have to presume that the cause of action exists. Otherwise, it can't be concealed. So we may eventually lose the cause of action because we find out that we can't prove paternity. But that doesn't mean you don't have to prove your entire cause of action to show that it was concealed. We're allowed to presume that he was being untruthful? That's what I'm struggling with, so help me. I think because we allege that. In other words, our facts are taken as true in the complaint, but not denied. The paternity has not been denied. And if you look at the Lipstone v. Wells case, it's kind of a similar thing where he comes back in court to de-establish paternity based upon a fraudulent statement earlier. And he has to prove both that he's not the father and that it was fraudulently concealed.  Or he first has to show that he has a right to come back in and submit his proofs. And these tend to come from statements that are made. I mean, it's not like a document or something like that out there that could be another basis of a concealment, a fraud of some sort. And I know my time's probably up. So in conclusion, we are requesting that this court remand to the trial court to reverse it. There's also an argument in there about remanding for evidentiary hearing, which is in the briefs, and I just didn't want to not preserve that in terms of my conclusion. So thank you for your time. And apologies for going over. I was answering questions. Thank you. Good morning. My name is Craig Unrath, and I represent the defendants at the Lease Council. Before I start, I'd just like to make a few short points. Opposing counsel said that the two affidavits cancel each other out. We have Dawn Severn saying, well, this is what was said. We have another one from Charlotte Gibbons saying she didn't say that at all. It's important to note that they don't cancel each other out because the court never addressed the merits of the case. The court never made a credibility determination here. The court never really looked at who's telling the truth and who's not. And the reason for that is that the case was dismissed on the basis of timeliness. The court had no need to address the merits of the case. Now... Isn't it, though, based on the event of that conversation, there's a basis for the timeliness? Absolutely. We have a judicial admission on a sworn affidavit stating that a particular conversation took place and the court had every reason to rely on that. We had another affidavit that said that didn't take place. And the court never had an opportunity to address that because based on the judicial admission itself, the case came to an end. There was no need to address Charlotte Gibbons' affidavit. No need to determine whether her affidavit was more credible or not. And this goes to the... She briefly mentioned the request for an evidentiary hearing. An evidentiary hearing is required where the facts are contested. However, the court never got there. Never got that far. The case was dismissed prior to the time that the merits could be addressed. It was found to be untimely. Now, just to say one more thing about the evidentiary hearing, they never made a request for an evidentiary hearing. And there is Supreme Court law. There's law that's been carried down. We can cite a dozen cases that say that if you fail to request an evidentiary hearing, then you've waived it. Now, they point out that in Ray Marriage of Buck, that they said you don't need a request. You can still get an evidentiary hearing. But I'd like to point out a quotation directly from the in Ray Marriage of Buck case. It states that... Oh, and I think I've lost my notes. It states that the petitioner in that case repeatedly requested an evidentiary hearing. Now, to the extent that the court holds otherwise, that's dicta. The petitioner in that case did request an evidentiary hearing. No evidentiary hearing was requested in this case at bar. Now, when a person files a personal injury action, medical malpractice, any kind of tort action, they get two years to file their complaint. They can use all of that time or none of it. They can file it on the last day before the statute runs, and that's perfectly acceptable. But here we're dealing with something altogether different. It's a 2-1401 petition to vacate a judgment, and diligence permeates every aspect of that type of action. If you file a 2-1401 petition, and you wait two years to file it, the first thing you're going to have to explain to the court is, why did you wait so long? If you file it a year after the judgment, you have to explain why you waited so long. There is case law out there where petitions to vacate judgment have been dismissed for lack of diligence because they were filed six months after the judgment. Diligence is a critical component of this entire case. Now, we're dealing with a very unusual case here. We have an individual who, from the time she was a small child, somehow knew that Everett E. Gibbon was her father. So at the age of seven, she approached him about this. Were you conceding that point? No, but I raise these as allegations that she's made. At the age of 14, or perhaps 15, she called him on the telephone. Apparently, somebody had been telling her that Everett E. Gibbon was her father. We don't know how or why, or who did that. We know it wasn't her mother. But to have a child of seven years old, and already convinced, the one thing that we do know is that her entire life, she suspected that Everett E. Gibbon was her father. And on August 2019, as an adult, she had a conversation, according to her affidavit, with Charlotte Gibbon where, for the first time, it was confirmed that Everett E. Gibbon was her father. The secret was finally out. To the extent that there was any fraudulent concealment, in this case, that concealment came to an end when a close family member to Everett E. Gibbon told her that, yes, it's true, he was her father. Now, at that point,  Again, we get back to diligence. Diligence is the key. But she did nothing. She didn't investigate at all. So the question, and there's really only one question in this case, boils down to a simple question. Did the two-year limitations period begin to run on the date she spoke with Charlotte Gibbon? Now, she claims that Charlotte Gibbon's statement was unreliable. She couldn't believe it. She wasn't sure if it was true. In her brief, she explains why. Now, I think this is very important here. This is on page 9 of her brief. Here's how she describes Charlotte Gibbon's statement. She said, Now, at the outset, I'm going to take issue with this mention of a stranger. Clearly, she was not a stranger. She was a family member. That's why she was at a visitation. But I digress. So Charlotte Gibbon, according to their brief, claimed to have information secondhand from a dead man that couldn't be verified with him and who provided no factual basis for the dead man's knowledge. And that's why it was unreliable. That's why the fraudulent concealment was not extinguished. That's why the two-year clock hadn't begun to run. Now, I asked the court to apply that same reasoning to the information she received from William Gibbon six years later. William Gibbon told her, he said, that the petitioner's mother, who died some 30 years earlier, told him that Everett Gibbon was her father. Okay, now apply the same standard she applied to Charlotte Gibbon. Let's apply that to William Gibbon. In her own words, this is secondhand information from a dead woman that could not be verified by him and who provided no factual basis for the dead man's knowledge. You see what I'm getting at here? To the extent that she found Charlotte Gibbon's statement unreliable, that same standard applies to William Gibbon's. They're completely identical. So it makes no sense to say that the fraudulent concealment ended upon William Gibbon's statement but did not end when Charlotte Gibbon had told her the same thing six years earlier. It just makes no sense. We submit that when she learned from a family member, somebody who knew the family, who was not a stranger, who told her purportedly that William Gibbon was her father, the fraudulent concealment came to an end. Now, she points out, she says that, well, Charlotte Gibbon, if she had approached her on this later on, she would have recanted. Well, again, how does she know that? Again, we're dealing with a 2-1401 petition here. She has to show diligence. She has to get out there and investigate this. She didn't do anything. She said in her affidavit that she was in possession of the family genealogy. She has the family tree. If anyone was capable of investigating this problem, it would have been her. She would have known to ask people like William Gibbon, like, I believe her name is Farlyn. She could have done that, but she didn't. Now, the Cabot decision, we relied on that pretty heavily, and it basically says that the fraudulent concealment comes to an end when the petitioner becomes aware of a possible claim or possible basis. Now, just a few moments ago, counsel said, well, she didn't know personally whether she could believe Charlotte Gibbon. That's not the test here. It's an objective test. It's whether the reasonable person would have suspected that she had been, that Everett Gibbon was her father. Was there an injury here? Did she have knowledge or suspicion, a reasonable suspicion of injury? Well, of course, this is her long-lost father. She's been written out of the will. She's been deprived of an inheritance. Of course there's a knowledge of an injury. And at that point, it was up to her to talk to somebody, to investigate further, talk to William Gibbon, talk to other family members, but there was absolutely nothing in the record giving a reason why she sat on her rights. Again, diligence is the critical factor in a petition to vacate. Now, the petition relies on the Hermitage decision, the Supreme Court decision, that says that the limitations period begins to run when a party knows or reasonably should know that an injury has occurred and that it was wrongfully caused. I tried... There is no law that I could find that applies the discovery rule to a fraudulent concealment case, but, you know, I look at the law in Hermitage and I think, well, I can live with that because I think that she did have reason to suspect that she had been injured, that there was an injury and that it was wrongfully caused. And even the Hermitage decision states that when you have that knowledge, once you obtain that information, you are under an obligation to inquire further to determine whether an actual wrong was committed. But in this case, she did nothing. As a matter of fact, as far as I know, she was approached by William Gibbon and I don't know that she performed any investigation. When all is said and done, what we have here is a case that demonstrates a complete and utter lack of diligence and that is fatal to any claim under 2-1401. If there are no further questions from the court... I have a question. She suspected he was her father, Everett E. was her father. Are you attributing any delay to her based on knowledge she had as a minor? In other words, does a minor have a duty to investigate because she was less than 14 years old? I could never do that to a minor. So the bookmark here is at the funeral where Charlotte talked to her. That's where you say her lack of diligence began. Absolutely. And I think that the factual statements regarding her inquiries when she was 7 and 14, I don't know that they have any bearing at all on when the fraudulent concealment ended. I think it's important to set the background. This establishes that this was a lifelong suspicion. It was something that she had always wondered about. And finally, when she sat in that church pew with Charlotte Gibbon, according to her, the mystery was solved. And at that point, that's when the statute began to run. So the measure is when the fraudulent concealment ended, not when it started? Yes. So you're saying Charlotte's conversation ended the fraudulent concealment? At that point, the secret was out. Was Dawn listed as an heir to Everett,  The concealment continued past that point, didn't it? Because she wasn't listed as an heir to her half-brother's estate. I don't know that I can say that there was any overt act on the part of anyone other than her mother and Everett E. Gibbon to conceal. And this is assuming facts in the light most favorable to the complaint. But if the wife of the deceased is saying, I know you're here because you want to see my husband, your half-brother, shouldn't the wife have taken steps to make sure Dawn was listed as an heir? I think that she's under no duty to do that. Certainly under no legal obligation. But to inform her of these facts, that puts the ball in her court. At that point, she has something to do here. She has a duty, a burden to investigate further. She meaning Dawn. Right. Absolutely. One last point I have here in my notes is that the court had asked, what other evidence do we have here? I have to admit, I learned something in this case. I was mistaken. I looked at this as hearsay that would be inadmissible in the court and opposing counsel corrected me on that by pointing out those pesky rules of evidence. I never did well in evidence class. I would make Justice Carter very happy to hear that. She pointed out that there is an exception to the rule. But it's important to take a look at that. She cited Hunter's trial handbook and Hunter's is a respected treatise. I'm not taking any issue with that. Hunter's relied on a 1912 case from the Illinois Supreme Court. That's Jarchow v. Gross. When you take a look at that case, it says, sure, these statements involving paternity or genealogy are admissible. Here's a quote. It says, although admissible is an exception to the hearsay rule, where it is used to, quote, set up some right claimed to be derived through the declarant, this cannot be done without other proof than the declarations of the declarant as to such relationship. Part of that is 1912 legalistic jargon. They had a tendency not to make things clear, but you do need something more than this to prove your case. The fact that they have William Given's statement, there has to be something more. The case to be proved here today is, did the fraudulent concealment continue? Right. After that conversation in the peer. Absolutely. Which the judge presumed happened. I mean, what you're discussing about the admission of hearsay, that goes to prove the case down the line. Absolutely, Your Honor. Our vision has to be so tunneled here as to fraud. And that, regardless of which way the case goes today, is not a prediction of the outcome if it goes forward. Absolutely, Your Honor. And that goes back to my initial point. The affidavits, certainly they're contradictory, but they do not cancel themselves out merely because Charlotte Given's affidavit was never at issue here. If the court believed Charlotte's affidavit to be truthful, then the conversation didn't occur and the fraudulent concealment didn't end. Yes. But the court never had occasion to even address that because the court found that the moment that she had that conversation from the petitioner's perspective, the case came to an end. We had a judicial admission. Thank you. Thank you, Mr. O'Meara. Ms. Nally Rubano. Thank you, Your Honor. I do believe it is important that we focus on what we're here on, which is the primary case, which is the fraudulent concealment. There is a second counterpetition, which is about reopening the probate. It's addressed in the briefs, and we haven't spent time in oral argument on that issue, but it's a secondary method for reopening the case. And it's based upon the procedural processes in probate cases. May I ask you a question? Sure. Is the affidavit that Charlotte submitted a perpetuation of the fraud? I guess that's a possibility. It could be. And here's that affidavit. I want you to understand what that affidavit says. It's very carefully crafted. I think a lawyer wrote it, just so you know. I think the lawyer wrote the petition to set aside that. Yeah, that too. But my point is that it doesn't say... I didn't say what Dawn says I said. That's what it says. It doesn't say what she actually said that day. The question isn't whether or not the concealment continued on the part of Charlotte or that family. Isn't it whether or not the content of that conversation is a basis enough to investigate for Dawn to say, you know what? Everybody's saying that this is my father. I've been lied to. You know what? I need to go out and figure this out. Really, that's the trigger, isn't it? That is their point here. The thing that the affidavit says, and this is why I say they cancel each other out, is that the affidavit says, regardless of what you believe about what was said in that pew, Charlotte's affidavit, which is uncontested, says I had no facts in support. Zero. There's nothing I could have produced that would have proven it. And she doesn't say, by the way, that Everett E. told Everett John. Okay? What she says is Everett John knew. That is Dawn Severn's statement, is that Everett John knew. The son knew. Not that his father told him. It's different than the types of things that she was told later by William. Not that William knew, but that your mother told me. Okay? There's a difference in the type of knowledge. That's a direct knowledge. Your mother told me this. The statement in the pew was not Everett E. told Everett John, and Everett John told me. It was Everett John knew that you were his father's daughter, or his father was your father. So the level of what's conveyed there is different. And the bottom line is, regardless of what was said there, we know that Charlotte had no evidence to back it up. So she called her on the phone the next day and said, I want to reopen these probate cases, which she didn't have notice of, by the way, which is another whole issue. She didn't even have notice of those judgments, because it wasn't published, she wasn't made a party. Charlotte, help me out. What's my affidavit going to say? And Charlotte's going to say, I don't have any facts. That's what her affidavit says. I've got nothing. I can't help you reopen those probate cases, because despite whatever you heard in the pew that day, my version versus your version, I have no facts. So, the, I just want to conclude, a section 214.01 petition serves to bring before the court that rendered judgment facts not appearing of record, which if known to the court at the time judgment entered, would have prevented its rendition. In other words, if the probate court had known that she was an heir, a child, she would have inherited the farmland through the probate proceeding. Courts apply this section with the aim of achieving justice, not to give a litigant a new opportunity to do that which she should have been done in the earlier proceeding. She wasn't given notice of that earlier proceeding. She wasn't made a party. She wasn't delaying anything in that probate proceeding, because she wasn't a party to it. Or to relieve the litigant of the consequence of his mistake or negligence. She made no mistakes. She wasn't negligent. She talked to the person that should have given her the answer, which was Ever E. She's entitled to justice in this case, and has committed no mistake or negligence by which justice should be taken from her. Don Murray Severance respectfully requests that the orders of the trial court dismissing counts 1 and 2 of her petitions be reversed, and the cause be remanded for proceeding on her section 214.01 petitions. And that her petitions reopen under the probate code on the merits. And the alternative is to count 1, she requests that the orders of the trial dismissing count 1 be reversed, and the cause remanded for an evidentiary hearing is set forth in our arguments in the brief. Thank you very much. I'm really sorry, but we started a little early. Can you address Mr. Umeroff's argument that this affidavit is a judicial admission crafted by an attorney? That affidavit states what Dawn's version is of what she heard that day. Okay? And what we have is a dispute. That's her testimony of what she heard that day. Okay? In the pew. We also have Charlotte's affidavit. He says that? Affidavit alone is a judicial admission. But this is why we get into this evidentiary hearing issue. Does that mean that we have a dispute of fact that would have to be resolved in order to resolve this case? I don't think we do. I could redraw all the inferences in favor of Dawn Marie Severance as to what took place. An affidavit, if you have a dispute of fact... Why isn't it a judicial admission? It is... I guess my point is it says... she doesn't deny that this is what she heard that day. We're not saying that... We're not recanting. And neither are they, by the way. That's not a recanting. She's saying, I never said it. She's not recanting it. If she were recanting it, then she'd be admitting that she said it. But I'm changing my mind. My question is so narrow. Why isn't that affidavit that Dawn signed a judicial admission that she had noticed? It's a judicial admission of what she heard that day. It's not an admission of notice. I appreciate it. That's the distinction. We don't deny that that's what she heard that day. What we deny is what are the inferences you draw from that? What notice did she get? Thank you for indulging me. I appreciate the extra time. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel discussion.